Good late morning, Your Honors. May it please the Court, Daryl Cordero for the Plaintiff Appellant, Gibson and Company Insurance Brokers. Your Honors, this is a paradigm case for class treatment under Rule 23. You have a defendant engaged in large-scale coordinated fax blasting. You have thousands of victims, over 19,000, all of whom are targeted because the defendant says these people are his agents. The claims of all class members arise under the same federal statute. The remedies are the same for all class members. The conduct and the violation is based upon common proof, proof that's common to the class. For instance, were the faxes advertisements is common to the class? Were the, did the faxes contain the required notice of opt-out opportunity? Another issue common to the class. And absent class treatment, these violations will go unremitied. The district court should have certified the class. The district court did not certify the class, and we expect that was pure legal error. Let me ask you a question. If you are going to have a motion to certify a class come up in front of us, what's the standard of review? The standard of review for denial of class certification is generally abuse of discretion. However, one may demonstrate that the district court committed legal error, in which case the standard of review is de novo. Well, you tell me that this, well, frankly, you'd have to cite the case which I really would agree with where we get to legal error. But in general, these class purported actions, certifications are abuse of discretion. So it seems to me, and I guess you'll have to show me where it isn't an abuse. But it seems to me that now I am trying to say, in an abuse of discretion standard of review, I'm trying to determine if, in fact, what the court did is not wrong, but is just not according to what one might do on abuse of discretion. Now, can we find in this particular instance that consent would not be the complete defense? Consent would not be the complete defense. Correct. In other words, if, in fact, this, your company, or any of these other companies, consented to this particular fax, transmissions, or whatever it is that they were sent, if they consented, that would be a defense, wouldn't it? Under the law, that is the only absolute statutory defense, is that, as phrased in the law, prior express permission. All right. And as I understand it, what has been alleged here by the defendants is that all of the agents, including Gibson, gave expressed and implied invitation and permission pursuant to two things. One, the terms of the individual agent's contract, which, if it was all just on contract, I think your argument would be easy. But the second is the important one, established business relationship as an agent. In other words, each one of those who are in front of the court has an established business relationship with this company, and some consent, some don't consent. So if consent is the complete defense, and I've got to go into every one of these people who have any kind of an agency relationship with the defendant, it seems to me that I can't really find that the district court abused its discretion when they said there's no way to have a common issue that would predominate, because everybody's going to have different situations. Let me address that, because there has been a somewhat chameleonic change in the defendant's position from what was stated at the district court. We hear a very different type of defense being urged here on appeal than the defendant maintained through the majority of the district court proceeding. Well, I read the district court's decision. It seems to go there. Yeah. And the district court's decision disregards the fact that this defendant consistently, unequivocally rested its defense on common contract language in its standard form agent's contract, in interrogatory responses, in responses to the court. Well, I'm reading you an interrogatory response. This is the one I read, because there was an objection. This is the one you're worried about when it comes to the discovery issue. All facts supporting the defenses, including all communications that support the defense, which to me is the biggest wide-open thing that ever was. And as a district judge, I said, hammer that down, counsel, so I know what the devil you're talking about. And there was an objection, and then they gave these two different reasons. One was the contract. One was the business relationship. And for me to suggest, based on all of the business relationships that may come out of a company's relationship with all of its agents, it would seem to me that I can't, on an abuse of discretion standard, undo the district judge. That interrogatory response conflated and confused two different concepts. The one was the issue of prior express permission that is the only statutory defense to liability, with the notion of an established business relationship. The established business relationship became pertinent because the FCC in 1992 had said that we interpret, if you have a business relationship with someone, we're going to deem that to be consent. The FCC put that in a footnote in a 1992 order. So what happened in 2005, which is the statutory regime under which we're operating, is that Congress said for the first time, you can have an established business relationship. That can be a defense. But if it is a defense, if you're going to rely on the established business relationship to fax, you also have to have obtained the fax number in a certain way, and most importantly you had to have provided the required notice of opt-out opportunity. So what American Equity was doing in that interrogatory answer was conflating those two entirely distinct concepts of whether there was prior express permission with the established business relationship. We concede, we freely concede that everybody with whom American Equity has an agent relationship has an established business relationship. They meet that prong of the statutory exemption under the 2005 law. There's no need to explore the meets and bounds of that relationship because it's sufficient to argue that if these people have at one time been American Equity agents, they are, they do have a relationship with American Equity. The issue is, however, whether they gave prior express permission to receive a facsimile, and the FCC has said, I'm sorry? What's the big deal here? With the statute? No, no. Why did you bring this lawsuit? We brought this lawsuit. What's the social purpose in bringing it? Congress People get faxes. I get them at home. And I keep getting them from the same place. They're telling me about where I can get a very nice Caribbean vacation, you know. Maybe someday I'll go there. Today's probably a good day to do it. So what? I get it. And I just toss it away. The congressional record leaves What's the harm? The harms are many, Your Honor. One, what motivated Congress Maybe I shouldn't ask you that because I'm aware of the harms that I have. And so maybe if I learn about the harms that I don't know about, maybe I'll feel worse. Well, let me address that, because this issue was addressed by this Court in the Destination Ventures case a few years ago, where the Court looked at the constitutionality of this law. But there were many harms identified by Congress leading to the passage of the law, including tying up fax machines so that they could not be used for ordinary business. People were complaining they could not even use their own fax machine because of the influx of information and incoming faxes, and they could not conduct their ordinary legitimate business. Congress also believed this was an unfair transfer of advertising costs from the advertiser to the recipient or the consumer by forcing, involuntarily forcing the consumer to consume his own paper and toner and machine in order to print the advertisement of the advertiser. So there was an outcry primarily from business, including small businesses, to enact this law and led Congress to do that. And in 2005, Congress again said we really meant it, and we intend for this law to eradicate the plague of junk faxes sent out to people and tying up their fax machines and forcing them to indulge that. But if I could return to... How about these phone calls you get at home? You know, when I'm at home, it seems like every other phone call is someone who's soliciting something from the, you know, highway patrol fund or some other fund. It just keeps coming. That's another aspect of the same statute is the telephone solicitation of residences that is governed by the same law. If I could return to Your Honor's point, though, about the commonality of the defense, this defendant rested on common contract language throughout. Then, for the first time in opposition to class certification, they came in and tried to suggest that they had obtained prior permission to fax in some type of individualistic way. And they did so through witnesses that they had not previously disclosed, and it's part of the 26A disclosure process. And through these witnesses, they offered one person... Allowing the defendant's additional time to submit the evidence in opposition to the class cert. Well, it was... Are these the affidavits you're talking about? These are the affidavits. These are the declarations. These are the ones. They came in after the judge had suggested that they needed to come up with something. And so then they came in and the judge said, well, I will give consideration to those. They offered a quartet of witnesses, but most importantly was one in-house paralegal who at the time was a marketing intern at the company, and she said, this is Ms. Banks. She said, well, Mr. Gibson had called me in July 2001 and asked me to fax him something. I know what your argument is about it. I'm suggesting is, what you're really suggesting then is that these particular affidavits were wrongly admitted to the record.  Let's suppose you're wrong about that. Then that's where we are with the abuse discretion in denying the motion, because he's already suggested they're rightly admitted to the record. Now, you can argue whether it was or wasn't, but let's go to the commonality, because now the affidavits are in. There's the quartet of those witnesses, plus they offered six out of 19,000 people who received these faxes. They offered testimony from six agents. They said, we really like to get faxes from American Equity. They also offered those, and those witnesses also had not been disclosed as part of the 26A. I understood. So now let's look at that. Now, let's look at that evidence as to whether it meets the standards of the law, and this is why I think the district court committed a legal error. Well, this is why I suggest that if we're going to argue about whether a 23A certification was wrong or right, you may want to argue about whether they should have come in. That's a different argument. But we're going to argue about whether it was right or wrong. We're going to have it all in and whether it meets the measure of the test. And under abuse of discretion, you'll have to convince me otherwise as to whether it's going to happen. With respect, Your Honor, I think the court committed legal error in its application of the law, which is why the abuse of discretion standard doesn't apply, and I'll tell you why. The law does not provide that it is enough to give your fax number to someone and that be deemed express consent. The FCC has said in its 2003 order, cited in the briefs, that to receive prior express permission to fax, the person who is allegedly providing that prior express permission must be told that he is providing his fax number for the purpose of receiving facsimile advertising. That's the standard of prior express permission, according to the FCC, the agency charged with interpreting and applying and enforcing this law. The Gemiola case cited in the briefs also comes to that conclusion. This defendant offered no evidence from any source from the six agents that they offered after the judge gave them the second crack to provide admissible evidence or from the two people who allegedly spoke with Gibson's principal. None of those people said, I was told that American Equity wanted my facsimile number for the purpose of sending me advertisements, and I voluntarily gave that number. They had no evidence that met the standard of prior express permission under this law. And that's why the evidence that was offered was irrelevant to that question, And we have the core issue that American Equity was always relying on was common contract language. In the Hanlon case, this Court said that the predominance question is, revolves around whether common issues represent a significant aspect of the case. If you can demonstrate that there are significant, common issues are that significant aspect, commonality is established. Here you have a defendant who has consistently and vigorously relied on contract language that is identical for every person that it faxes to as the alleged source of permission to receive that fax. That establishes the significant aspect of the case. Commonality becomes a significant issue in the case because of the common contract language. That's what distinguishes our case from the recent decision of the Fifth Circuit in Jean and Jean, where the Court faulted the plaintiff because the plaintiff did not offer a viable theory of generalized proof of expressed permission. Well, here we have a great ---- Well, now you've made a good or you've made an argument on commonality. What are you going to make on your argument that your client is typical? I mean, that's, you can go on any one of these. I mean, if you lose on commonality, you're out. If you lose on the fact that they have a lot of things said in their affidavits, and that's the problem that I have in this particular situation, they have a lot of things said in their affidavits that your particular client may have a totally different situation than any other one of these agents based on the relationship. And I'd be happy to address that, because that will, the court, the district court relied on this Court's decision in Alaska and in Hannon, which said that if there was a, if there is a unique defense to the claim of the particular class representative that threatens to skew the focus of the litigation, that's a basis for denying certification under typicality. Several responses to that.  Number two, what was the, what was the trial time that could be anticipated for this issue? Very small. Number three. Now, the problem is, come up with something better on number three, because number one and number two are certainly discretionary decisions for the district court. It was not a defense, because the defense, the court cited the court's decision that the defendant faxed certain documents to him on prior occasions. That's what the district court said. The only evidence of that was not certain documents. It was one document. It was in 2001. The fact that Gibson had requested in 2001 that this defendant fax a bonus certificate  It doesn't make any sense to me. prior express permission to receive facsimile advertisements under the standards of this law. So the, so even if you, even if you give what the district court said as full credence, that this was a fact, that there had been a request in 2001, the defense, as Judge Posner put it in the Hardy case, may be unique, but it's not a defense, because even if you assume for sake of argument that he had requested one document in 2001, that does not constitute express permission to receive fax ads in 2005 and 2006. I'm going to reserve what little time I have left for rebuttal. Thank you. Thank you. Good morning, Your Honors. You know, listening to that last case reminded me of my own experience growing up in a private school in a little one-room schoolhouse, and there was a big paddle on the principal's wall, and it said Board of Education on it. And I can personally attest that it wasn't for decorative purposes only. Anyway, on to this case. You're too young for that. There's only two or three, and we two really got that. I do, too. I got it, indeed. Anyway, Your Honors. Was that little schoolhouse big enough for you? Well, barely, Your Honor. It's been a long time since then. Where was the school? Shasta Lake, California, up in the foothills, far northern California. Okay. And the paddle didn't come off the wall. I think Judge Smith put his finger on the two key issues here. Number one is the standard overview. Rule 23 is uniquely entrusted to the discretion of the trial courts because it requires judgments about how is the case going to play out? How is it going to be tried? What are the issues that are likely to dominate the trial? How can they be managed? And there's no one better than the district judge, Judge King, in this case, to make those kind of judgments. They can't be second-guessed on appeal. Now, if Judge King makes a decision in this discretionary decision that Judge King makes, and that decision imports a wrong interpretation of the law in order to help make that discretionary decision, that interpretation of the law isn't discretionary, is it? That's correct, Your Honor. It's not. But plaintiff's counsel hasn't shown any error in the legal stand here. What counsel argues is that the judge got it wrong and that the issues, the defenses that beset the named plaintiff's case really weren't going to occupy. They really weren't going to distract. They really weren't going to become the focus. And counsel also argues that these common issues really weren't going to take as long and be as difficult as the district judge thought. And he argues that, you know, the district judge should not have allowed us to submit additional evidence. And he should have allowed the other side more time to combat that evidence. Those are all matters that are clearly within the discretion of the district court. And, you know, whether this evidence was properly disclosed soundly within the district court's discretion. Counsel argues that on the commonality issue, the question of predominance, we submitted declarations from multiple agents who didn't just say, as counsel says, that they didn't want to be any part of this case, that they liked receiving faxes. They said much more than that. They said, I call American Equity frequently. I ask them to send me faxes. I ask them to send me information. Now, counsel said none of that matters because, you know, you have to be told somehow that we're going to send you an advertisement. There's nothing in the statute that suggests that. The regulations counsel cites have never gone into effect. They've never gone into effect. Counsel doesn't tell you that. And even if they were effective, they say on their face, the agency says, look, if you publish your fax number in some trade directory, that doesn't mean consent. You know, before I as a merchant, if I as a merchant find your fax number in a trade directory somewhere, I can't assume that's consent. I have to call you up and say, hey, is it okay for me to send you an advertisement? I know your fax number's in there for business matters, but is it okay for me to send you an advertisement? That's a totally different situation. What we have here is people who are our agents. They enter into a contract with us like the plaintiff did. He even faxed the application to us. We go through a background check. We have them appointed with the State Department of Insurance. We do ongoing business with them. They want to see our materials. These aren't junk for them. These are materials about the products that they're selling for us. These aren't advertisements. And these people call us and they ask us for information. That's what they say in the declarations. Now, imagine if I called up Sears and I said, you know, I would like you to fax me some information on your freezers. Give me your price list and your product descriptions. The Sears have to tell me, well, wait a second. That could be considered an advertisement. I can't fax that to you without your prior express permission. Of course not. There's nothing in the statute which suggests otherwise. So there's no evidence here. There's no showing here that the evidence we presented is legally insufficient. It is a defense. And the district court did not abuse his discretion in finding that these would likely occupy the attention of the court should this go forward. There's a long line of case law that we cite and I'll read from the Fourth Circuit Federal Court of Appeal, from the Fifth Circuit Federal Court of Appeal, from state courts throughout the country who have consistently denied cert in these junk tax cases when there's any evidence of individualized consent. And it's certainly true here. And the other issue I'd like to briefly address, with the Court's permission, is the other issue that Your Honor Judge Smith touched on too, which is that there are three separate and independent grounds for the Court's holding here. The Court found that the plaintiff, the named plaintiff, was not a typical or adequate representative of the class. The district court found that common issues did not predominate. And the district court found that a class action was not superior to other methods for resolving this controversy. And Your Honor's going to reverse only if you find there was an abuse of discretion on each and every one of them, because any one of those findings, sitting alone, is enough to uphold the ruling. I've talked to that. Well, if we apply the factors under 23b, which is the last one that you're talking about as superior, the damages for anybody to pursue these kind of actions on their own would be absolutely minimal. So it would seem to me that the cost of pursuing the action would be greater than the damages one might get. So it might be, applying the factors under 23b, that the individual controlling the whole thing may not be as important. That's factor one. Factor two, the amount of litigation that's already occurred by or against the class. The plaintiff is the only agent who wants to bring this claim, so there's not been any big amount of litigation. So that would suggest we might have a class. Desire or non-desire to concentrate the litigation in a particular forum. There's nobody in this record who wanted to get this litigation in one forum or another, so why doesn't that say there ought to be a class? And then the last, likely difficulties in controlling the class. If one is the only one that's going to do it, why do we have difficulty in controlling it? Well, as Your Honor knows, that's a non-exclusive list of sort of examples. Well, but frankly, it's right in the rule. It is the factors. It is indeed, Your Honor. It's a non-exclusive list of factors. But, you know, I think really the court looks to, you know, more broadly, what is the public benefit or the social purpose served by this litigation? And there is none here because, you know, this is not a would-be class of poor, downtrodden, unsophisticated consumers. It is stipulated. It is undisputed that we send these factors only to our agents who are insurance brokerage companies, big companies sometimes, who employ dozens, if not hundreds, of people. These are not unsophisticated, poor people who lack a remedy. If these are... Doesn't Gibson claim that they weren't one of your agents, though, because they never sold a policy? Exactly, Your Honor. And, well, he says, and this goes right to typicality and to commonality, too, because we've submitted proof here that shows he submitted an application, he went through a background check, he was registered with us with the DOI, we sent him the application, he filled it out. He called us and asked us to fax him information. We called him nine different times and told him we were going to fax him information. He gave us his fax number. He denies all of that. Now, that makes for a good horse race, but a very poor class action because it just shows you how in each case you're going to have the individual litigate these kind of issues. Is he telling the truth or are we telling the truth? I think we are, but a jury is going to have to sort all that out. So you're right, it is disputed, and that's exactly why the district court said that he's not typical, he's not adequate, and common issues don't predominate. With that, I would submit, unless the Court has any questions. Thank you, Your Honor. Thank you. Very briefly, Your Honor. On the standard of review, I think Judge Smith's comments or observations are absolutely correct. If the decision imports within it a legal standard that is contrary to law, then I think that subjects that decision to de novo review. I've identified several, I think. My worry about that is the reason I put it to him, and he didn't quite respond, the reason I put it to him is that this, I mean, I've been in these district court positions about certifying class or not certifying class. And if, in fact, the whole of the certification of the class would depend solely on my determination of the legal issue, I might go with you. But if my determination on the certification of the class had to do with that issue, as well as other issues that were also involved in the litigation, then it seems to me that we're back in an abuse of discretion determination. In this case, though, if I could identify a single thread that I think informs a lot of the district court's decision, it is a misunderstanding of the legal standard of what is prior express permission under this law. And the district court seemed to believe that if you have a, if you request a document, that that is prior express permission. That is not prior express permission under this law. And the FCC, whose order did go into effect in 2003, says you must be told it's an advertisement. He asked for a document in 2001. There's no question about that. But that doesn't transmute into prior express permission. The district court also failed to acknowledge, I would point out, let alone apply, this Court's standard for predominance under Hanlon, which is the significant aspect of the case standard. The district court didn't even mention that standard in its decision, so it's very hard to determine which standard the district court was applying. American Equity had argued for a different standard that was advocated by a Texas appellate court, as it did before this Court. As to the issue of commonality, this is a critical point, because it bears on both the typicality issue as well as the predominance question. The body of evidence by the time the district court ruled was closed. It was hermetically sealed. The discovery period was over. The witnesses had been identified. The body of evidence, such as it was, that went to the issue of predominance was already before the Court in the form of their form contracts and the claims by these six people that they had granted, that they liked receiving faxes. Some of the people, by the way, who they offered didn't even assert that they had communications with American Equity. One person said, well, I'm an independent contractor with a national marketing organization or with an agent, and I told my contract party that I like to get faxes. He didn't even single out American Equity. He just says, I like to get faxes for the products I sell. So the body of evidence was closed. The discovery period was over. There was not going to be any more discovery. The Court and so the die was cast as to the body of evidence on which a trial would be based, which I think goes both to the predominance question as well as the question of stele focus. As far as superiority is concerned, your comments and observations are absolutely correct. Counsel says he seems to suggest, as he did before, that, well, these are sophisticated insurance agents. They have money. They're not the poor downtrodden consumers. As though Rule 23 were somehow limited to poor people and that businesses and small businesses could not take advantage of the economies of scale that Rule 23 treatment provides for the aggregation of claims that in the absence of class treatment would simply not be brought and violations would go unrendered. Thank you, Your Honor. Thank you. Thank you, Your Honor. Thank you. And what is our start time tomorrow? Okay. We'll recess till 8 o'clock tomorrow morning. Thank you very much. Thank you. Thank you, Your Honor.
judges: Pregerson, Smith, Collins